**HARRIS TRANSFER & WAREHOUSE CO. v. LOUISVILLE & N. R. CO. (INTERSTATE COMMERCE COMMISSION, Intervener).**

**SAME v. ST. LOUIS–SAN FRANCISCO RY. CO. (INTERSTATE COMMERCE COMMISSION, Intervener).**

**SAME v. SOUTHERN RY. CO. (INTERSTATE COMMERCE COMMISSION, Intervener).**

**Nos. 5953–5955.**

District Court, N. D. Alabama, S. D.
March 31, 1947.

Sadler & Sadler, of Birmingham, Ala., for plaintiff.

Gibson & Gibson, of Birmingham, Ala., for defendant Louisville & N. R. Co.

Cabaniss & Johnston, of Birmingham, Ala., for defendant St. Louis-San Francisco Ry. Co.

Benners, Burr, Stokely & McKamy, of Birmingham, Ala., for defendant Southern Ry. Co.

A. Henry Walter and Glenwood W. Rouse, both of Washington, D. C., for intervener Interstate Commerce Commission.

LYNNE, District Judge.

### Findings of Fact.

1. On January 18, 1947, the Harris Transfer & Warehouse Company, a Corporation, filed separate complaints against the Louisville & Nashville Railroad Company, the St. Louis-San Francisco Railway Company and the Southern Railway Company, seeking declaratory judgments under the Declaratory Judgment Act, 28 U.S.C.A. § 400, in respect of their rights and other legal relations arising out of a contract between the plaintiff and the defendant, which, it is alleged constitutes the plaintiff the agent or contractor of the defendant, to perform for that railroad company the pick-up and delivery service offered in its tariff at Birmingham, Alabama. On February 7, 1947, the Interstate Commerce Commission was granted leave to intervene as a party defendant in each of the cases. On February 10, 1947, plaintiff filed an amended complaint. The three railroad defendants and the intervenor defendant filed answers to the amended complaint. On March 19, 1947, the several cases came on to be heard, after due notice. The plaintiff and each of the defendants appeared by counsel. The several cases were consolidated for trial, pursuant to Rule 42 of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c.

2. Defendants Louisville & Nashville Railroad Company, St. Louis-San Francisco Railway Company, and Southern Railway Company are common carriers by railroad, performing transportation for hire in interstate commerce, and are subject to the provisions of the Interstate Commerce Act, 49 U.S.C.A. § 1 et seq. They are citizens of states other than the State of Alabama. Plaintiff is a corporation organized under the laws of the State of Alabama and is a citizen of that state, and for many years has engaged in the warehousing business and in the cartage business. The amount in controversy in each case exceeds $3,000.00, exclusive of costs.

3. Defendant railroads have now in effect and have had in effect for many years, tariffs providing free pick-up and delivery on outbound and inbound less than carload shipments transported by rail from Birmingham to points beyond and into Birmingham from points beyond. The area within which such free pick-up and delivery service is offered, is substantially that defined by the corporate limits of that city, to-wit: approximately 52 square miles. The several tariffs contain a provision reading as follows:

"When the consignor elects to make his own arrangements for the pick-up service authorized herein, an allowance of 5 cents per 100 pounds will be made to such consignor for such service," with some conditions and exceptions not here important.

4. For approximately fourteen years plaintiff has had separate but similar contracts with the three defendant railroads

and with all other rail carriers serving Birmingham, by the terms of which they engaged the plaintiff to perform for them and in their behalf the pick-up and delivery service offered by the defendants and the other rail carriers at Birmingham, without limitation to any certain consignors or to any certain premises; required plaintiff to maintain all such vehicles and equipment necessary to perform such service promptly and safely; to collect all charges with respect to such freight; to save harmless and indemnify the railroad company against all loss, damage, cost and expense arising out of or incident to such service. The compensation of plaintiff for performing such service has for many years exceeded 5 cents per 100 pounds, and at the present time is fixed by the contracts at 14 cents per 100 pounds; and until August 1, 1946, as hereinafter mentioned in paragraph 15, the compensation has been computed and paid upon the total tonnage hauled under the contracts—that hauled from plaintiff's warehouse along with the rest.

5. The several tariffs contain the following provision:

"Request for pick-up service will be accomplished by consignor notifying the carrier's agent at origin that service is desired. The carrier will endeavor to honor promptly such request, but will not be responsible for shipment, or delay thereto, *until receipted for and loaded on truck or dray.*" (Emphasis supplied)

6. The several railroads do not maintain equipment of their own for performing such pick-up and delivery service. The plaintiff is the exclusive contractor performing that service for the defendant railroads and, likewise, for each of the other rail carriers serving Bermingham.

7. The contracts were made in good faith, without intent to defeat or evade the lawful published tariffs of the defendant railroads; and they have been performed in good faith.

8. In the operation of its storage warehouse, plaintiff receives goods for storage from various owners, some residing within and some residing without the State of Alabama. In some instances those goods are received in carload lots. Plaintiff unloads the shipments and stores the goods in its warehouse at the expense of the owners. From time to time the plaintiff receives directions from the respective owners to prepare certain of the goods on storage for shipment to various consignees at various destinations. Upon receipt of such directions from its customers, and pursuant thereto, plaintiff withdraws goods from storage and prepares the packages for shipment by marking them with the names and addresses of the consignees. In some of those cases the owner himself prepares the bill of lading completely, including the routing. In other cases the owner prepares the bill of lading without inserting the routing. In still other cases the owner prepares no part of the bill of lading and in such cases the plaintiff prepares the bill of lading on standard bill of lading forms. In those cases where the owner prepares the bill of lading but does not insert the routing, and in those cases where the owner does not prepare any part of the bill of lading, the plaintiff inserts the routing in line with the owner's directions then or previously given, or inferred by plaintiff from a long course of conduct.

9. The bills of lading always show the owner of the goods to be the consignor and to be the person from whom the goods were received by the carrier for transportation.

10. After the packages are prepared for shipment, plaintiff's employees in its warehouse place them upon the plaintiff's dock or shipping platform, accompanied by the bill of lading. The manager of the dock or loading platform checks the bill of lading against the goods placed there and gives the manager of the warehouse a receipt therefor.

11. The packages are then removed from the dock or loading platform and loaded on plaintiff's trucks by cartage employees of plaintiff and transported by them to the rail stations of the defendant railroads and there delivered to the station agents of the defendant railroads. Each of the several copies of the bills of lading are there executed in the name of the railroad company by the station agent or the railroad employees.

12. Goods picked up pursuant to the contract at other warehouses and at other

premises are handled in the same way except that in those cases the receipt given by the plaintiff is usually in the form of a copy of the bill of lading on which plaintiff's truck driver signs plaintiff's name. It being generally known in the area that plaintiff is the exclusive pick-up contractor for the railroad companies, those shippers almost always call plaintiff direct for that service.

13. Plaintiff has no proprietary interest, either present or prospective, in any goods transported from its warehouse. Of the shipments hauled by the plaintiff under its several contracts, approximately 10% are transported from plaintiff's warehouse and approximately 90% are transported from the premises other than plaintiff's warehouse.

14. The owners of the goods pay the plaintiff for its services in storing their goods and also pay additional compensation for preparing the goods for shipment and placing them on the dock or loading platform. The railroads pay no part of the charges for those services. The owners have not elected to make their own arrangements for the pick-up service as authorized in the tariffs, but elect to avail themselves of the free pick-up service offered in such tariffs. They pay nothing for the transportation of their goods from plaintiff's warehouse to the freight stations; nor do they receive any allowance from the railroads on account of such transportation. Plaintiff retains all compensation paid to it by the defendant railroads for transporting the shipments from its warehouse to the railroad freight stations; plaintiff's customers receive no part thereof. The compensation charged by the plaintiff for warehouse services is not less than a reasonable and compensatory rate. The contract rate of 14 cents per 100 pounds paid to plaintiff by defendant railroads was not more than a reasonable and compensatory rate for the services rendered pursuant to those contracts.

15. On or about August 1, 1946, these three railway company defendants, and some others having like contracts, but not all of them, having been apprised of a letter addressed by the Bureau of Inquiry, Interstate Commerce Commission, to the Association of American Railroads regarding compliance with rail carriers' tariff provisions in respect to allowances to consignors and consignees, and desiring not to take any risk in that regard, notified plaintiff that thereafter they would pay only 5 cents per 100 pounds on traffic hauled pursuant to said contracts, from the warehouse of plaintiff to those several railroad depots. Plaintiff agreed with those several railroads that it would continue to render pick-up and delivery service as theretofore and would accept settlement on the basis of 5 cents per 100 pounds on goods hauled from its warehouse to the depots of those several rail carriers, pursuant to the several contracts, until the doubt in respect thereto should be resolved by some authoritative decision, but not longer than a reasonable time, reserving, however, the right to claim the balance at an appropriate time. The filing of these complaints followed after the expiration of several months.

16. In transporting the goods from its warehouse to the railroad depots, the plaintiff acts under and pursuant to its contracts with the defendant railroad companies; and in so doing it is the agent or contractor of the railroad companies, and not of the owners, from the time the goods are loaded on the trucks and receipt given therefor, the same as in the case of goods transported from other premises. It is not the consignor of such goods.

17. In respect of goods so transported, the possession and the responsibility of the railroad companies as carriers commence when the goods are loaded on the trucks and receipt given therefor. The owner does not render any service connected with such transportation, as distinguished from the preparation of the goods for transportation, or furnish any instrumentality used therein.

## Conclusions of Law.

I conclude that the contracts are lawful under the circumstances here appearing; that plaintiff was not the owner or the consignor of the goods hauled under those contracts; that in transporting the goods from its warehouse plaintiff was the agent of the railroad companies and not of the owners or consignors; that plaintiff's compensation

is measured by the rate named in the contracts and is to be computed upon the entire tonnage hauled under the contracts, including along with the rest, the tonnage hauled from plaintiff's warehouse.

Judgment is hereby rendered accordingly.